UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

BRAD KUENZIG, on behalf of
himself and all others similarly
situated,

        Plaintiff,

v.                                                      Case No. 8:11-cv-838-T-24 TGW

KRAFT FOODS, INC. and HORMEL
FOODS CORP.,

        Defendants.
_____/

## ORDER

This cause comes before the Court on Defendants' Joint Motion to Dismiss. (Doc. No. 27). Plaintiff opposes the motion. (Doc. No. 41). As explained below, the motion is **GRANTED**.

**I. Standard of Review**

In deciding a motion to dismiss, the district court is required to view the complaint in the light most favorable to the plaintiff. See Murphy v. Federal Deposit Ins. Corp., 208 F.3d 959, 962 (11th Cir. 2000)(citing Kirby v. Siegelman, 195 F.3d 1285, 1289 (11th Cir. 1999)). The Federal Rules of Civil Procedure do not require a claimant to set out in detail the facts upon which he bases his claim. Instead, Rule 8(a)(2) requires a short and plain statement of the claim showing that the pleader is entitled to relief in order to give the defendant fair notice of what the claim is and the grounds upon which it rests. See Bell Atlantic Corp. v. Twombly, 127 S. Ct. 1955, 1964 (2007)(citation omitted). As such, a plaintiff is required to allege "more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." Id.

at 1965 (citation omitted).  While the Court must assume that all of the allegations in the complaint are true, dismissal is appropriate if the allegations do not "raise [the plaintiff's] right to relief above the speculative level."  Id. (citation omitted).  The standard on a 12(b)(6) motion is not whether the plaintiff will ultimately prevail in his or her theories, but whether the allegations are sufficient to allow the plaintiff to conduct discovery in an attempt to prove the allegations.  See Jackam v. Hospital Corp. of Am. Mideast, Ltd., 800 F.2d 1577, 1579 (11th Cir. 1986).

## II.  Background

Plaintiff Brad Kuenzig alleges the following in his complaint (Doc. No. 1): Plaintiff purchased and consumed both Defendant Kraft and Defendant Hormel's lunch meat products that contain "percent fat free" claims on their labels.  Plaintiff contends that both Kraft and Hormel's "percent fat free" claims on their labels are unfair, deceptive, and misleading and that such packaging has allowed Kraft and Hormel's sales to outpace their industry's growth.

### A.  Kraft

Plaintiff contends that "Kraft employs a clever psychological technique to trick consumers into believing that its Percentage-Fat-Free claims are calculated based on calories[,]" because Kraft lists the calories immediately adjacent to the Percentage-Fat-Free claim on its labels. (Doc. No. 1, ¶ 22).  Thus, Plaintiff alleges that Kraft links its "percent fat free" claim to the calories listed on the front of its labels via the close proximity of the information and by inserting a small hyphen or dot between the information to imply a correlation (i.e., that the "percent fat free" claim refers to the percent of non-fat calories).  As such, Plaintiff contends that Kraft's labels are misleading because: (1) the "percent fat free" claims misrepresent that they are

2

based on the amount of calories that come from fat in the product, which misleads consumers into believing that there are less fat calories in the product than there actually are; and (2) the labels do not contain qualifying language next to the "percent fat free" claims to explain that the claim is actually based on weight, not calories.

For example, Plaintiff alleges that the label on the front of Kraft's Oscar Mayer brand Oven Roasted White Turkey contains the claim "95% fat free" above the claim "30 calories per serving." Plaintiff contends that such labeling misleads consumers into believing that only 5% of the 30 calories per serving (or 1.5 calories) actually come from fat. However, the actual number of calories that come from fat for that product is 15 calories per serving, which equates to 50% of the total calories coming from fat.[1]

Plaintiff acknowledges that on the back label of Kraft's packaging, there is a nutrition panel that discloses the number of calories per serving, as well as the number of those calories that come from fat. However, Plaintiff contends that Kraft uses the smallest permissible font to disclose such information.

### B. Hormel

Plaintiff concedes that Hormel does not include a calorie content claim on its front labels near its "percent fat free" claim. However, Plaintiff contends that because Hormel knows that its products will be placed on grocery shelves near Kraft's products, Hormel's "percent fat free" claim on its labels on the front and back of its products is equally unfair, deceptive, and

---

[1] Plaintiff identifies ten other Kraft/Oscar Mayer brand lunch meats that he contends make similarly misleading claims: (1) cracked black pepper turkey breast, (2) smoked turkey breast, (3) smoked ham, (4) mesquite turkey breast, (5) Virginia brand ham, (6) slow roasted roast beef, (7) honey ham, (8) a second variety of smoked ham, (9) brown sugar ham, and (10) oven roasted turkey.

3

misleading. Specifically, Plaintiff states that because Kraft's "percent fat free" claim on the front labels of its packaging is linked to the amount of calories in Kraft's products, "Hormel's identical Percentage-Fat-Free claims lead consumers to believe that both companies are using the same measure"–that is, that Hormel's "percent fat free" claims refer to the percent of non-fat calories in its products (even though Hormel's "percent fat free" claims are not accompanied by a statement of calories per serving). (Doc. No. 1, ¶ 33). As such, Plaintiff contends that Hormel's labels are misleading because: (1) the "percent fat free" claims misrepresent that they are based on the amount of calories that come from fat in the product, which misleads consumers into believing that there are less fat calories in the product than there actually are; and (2) the labels do not contain qualifying language next to the "percent fat free" claims to explain that the claim is actually based on weight, not calories.

For example, Plaintiff alleges that the label on Hormel's Natural Choice brand Smoked Deli Ham claims that the product is "97% fat free." Since the nutrition panel reveals that a serving of the ham has 60 calories, Plaintiff contends that Hormel's "percent fat free" claim misleads consumers into believing that only 3% of the 60 calories per serving (or 1.2 calories) actually come from fat. However, the actual number of calories that come from fat for that product is 15 calories per serving, which equates to 25% of the total calories coming from fat.[2]

Plaintiff acknowledges that on the back label of Hormel's products, there is a nutrition panel that discloses the number of calories per serving, as well as the number of those calories

---

[2]Plaintiff identifies seven other Hormel/Natural Choice brand lunch meats that he contends make similarly misleading claims: (1) cooked deli ham, (2) oven roasted deli turkey, (3) brown sugar deli ham, (4) honey deli ham, (5) smoked deli turkey, (6) honey deli turkey, and (7) mesquite deli turkey.

that come from fat. However, Plaintiff contends that Hormel uses smaller font than necessary to disclose such information, while it also prints the "percent fat free" claim on the back label of the package in larger font than the nutrition panel.

### C. The Complaint

Plaintiff filed this lawsuit under the Class Action Fairness Act on behalf of all people similarly situated throughout the country that purchased Defendants' products that contained "percent fat free" claims on the labels since 2006. He asserts eleven counts in his complaint.

In Count I, Plaintiff asserts a claim for injunctive and declaratory relief. Specifically, he asks the Court to order Defendants to remove their "percent fat free" claims from their labels and then to undertake an advertising campaign to clear up consumer confusion about the true fat content of their products.

In Count II, Plaintiff asserts an express warranty claim, based on his contention that Defendants' labels misrepresent the amount of fat in their products. Specifically, Plaintiff asserts that Defendants' "percent fat free" claims are representations that the claims are based on calories. As such, Plaintiff contends that Defendants' "percent fat free" claims misrepresent the true percentage of calories that come from fat, and by extension, the actual number of fat calories in their products. Therefore, because the products at issue actually contain more fat calories, and thus a higher percentage of fat calories, than represented by their "percent fat free" claims, Defendants have breached their express warranties created by their "percent fat free" claims.

Similarly, in Count III, Plaintiff asserts a claim for breaches of the Uniform Commercial Code ("UCC"). Specifically, Plaintiff contends that because Defendants' products at issue actually contain more fat calories, and a higher percentage of fat calories, than represented by

their "percent fat free" claims, Defendants have also breached their express warranties under the UCC. Therefore, Plaintiff contends that he has the right to revoke his acceptance of the products under the UCC. Furthermore, Plaintiff alleges that because the "percent fat free" claims are misleading regarding the amount and percentage of fat calories in the products, Defendants have also breached the UCC's obligation of good faith and fair dealing.

In Count IV, Plaintiff alleges that Defendants' use of the "percent fat free" claims on their labels, websites, and advertising is misleading, and as such, it is an unfair and deceptive trade practice. Therefore, Plaintiff asserts a claim for Defendants' violation of every state's Little Federal Trade Commission Act ("Little FTC Act claim").

In Counts V and VI, Plaintiff asserts claims for fraudulent and negligent misrepresentation. Specifically, Plaintiff contends that Defendants' "percent fat free" claims on their labels are affirmative misrepresentations regarding the percentage and amount of fat calories present in their products.

In Counts VII through XI, Plaintiff asserts claims for unjust enrichment, quantum meruit, fraudulent conversion, trespass to chattels, and repleven. Essentially, in these claims, Plaintiff alleges that Defendants wrongfully took Plaintiff's money when he purchased the products at issue, because the products had more fat calories, and thus a higher percentage of fat calories, than represented on their labels via the "percent fat free" claims.

Plaintiff's claimed damages consist of the money he spent on Defendants' products that he would not have purchased had he not been misled about the true number and percentage of fat calories in the products. Additionally, Plaintiff claims that Defendants' products have caused damage to his body due to the "alter[ation]" of his "prior physical structure" as a result of his

consumption of the excess fat calories, which can cause "unknown increases in medical problems and risks, including the unwanted accumulation of body fat." (Doc. No. 1, ¶ 69, 70).

## III. Motion to Dismiss

Defendants move to dismiss all eleven counts, arguing that: (1) Plaintiff's claims are preempted by federal law; and (2) even if Plaintiff's claims are not preempted, Plaintiff has failed to sufficiently state any of the eleven claims. Accordingly, the Court will analyze these arguments.

### A. Preemption

Defendants first argue that Plaintiff's claims are preempted by federal law. In addressing this argument, the Court will begin by describing the relevant statutory and regulatory framework that is in place regarding the labeling of poultry and meat products.

#### 1. The PPIA and the FMIA

Congress enacted the Poultry Products Inspection Act ("PPIA")[3] and the Federal Meat Inspection Act ("FMIA")[4] to ensure, among other things, that poultry and meat products are properly labeled. See 21 U.S.C. § 602, § 451. Under the PPIA and the FMIA, meat and poultry products cannot be sold if the product has labeling that is false or misleading. See 21 U.S.C. § 457(c), § 607(d); see also 9 C.F.R. § 381.129(a), § 317.8(a). In regulating the labeling of meat and poultry products, Congress has stated that labeling requirements "in addition to, or different than," those set forth under the PPIA and the FMIA may not be imposed by any state. See 21 U.S.C. § 467e, § 678. However, Congress also provided that states may, consistent with the

---

[3]The PPIA is set forth in 21 U.S.C. § 451 et seq.

[4]The FMIA is set forth in 21 U.S.C. § 601 et seq.

requirements set forth under the PPIA and the FMIA, exercise concurrent jurisdiction with the United States Department of Agriculture ("USDA") to prevent the distribution of poultry and meat products that have labeling that is false or misleading. See id.; see also 21 U.S.C. § 453(h)(1), 601(n)(1). The states' concurrent jurisdiction has been interpreted to mean that states can impose sanctions for violations of state requirements that are equivalent to the FMIA and the PPIA's requirements. See National Broiler Counsel v. Voss, 44 F.3d 740, 746 (9th Cir. 1994); Bates v. Dow Agrosciences LLC, 544 U.S. 431, 442, 447 (2005)(construing similar language in 7 U.S.C. § 136v(b)).

Thus, the USDA regulates the labeling of meat and poultry products under the PPIA and the FMIA. The regulations relating to the PPIA and the FMIA provide that meat and poultry products can have a "percent fat free" claim on their labels (also known as a nutrient content claim[5]), as long as the product is low fat (as defined in the regulations) and the words of the claim are in uniform type size. See 9 C.F.R. § 381.462(b)(6); 9 C.F.R. § 317.362(b)(6). Further, the regulations also require that both the calories from fat and the number of grams of fat in meat and poultry products be listed in the nutrition panel on the product's label. See 9 C.F.R. § 381.409(c)(1)(ii), (c)(2), & (d)(5); 9 C.F.R. § 317.309(c)(1)(ii), (c)(2), & (d)(5); see also 58 FR 632-01, 1993 WL 1405, at *643.

Additionally, the regulations provide, with certain exceptions[6] not relevant to this case,

---

[5]An express nutrition content claim is a direct statement about the level of a nutrient in a product that appears on the product's label outside of the nutrition panel. See 9 C.F.R. § 381.413(b)(1) & (c); 9 C.F.R. § 317.313(b)(1) & (c).

[6]The regulations allow certain types of labels to avoid the sketch labeling pre-approval process, and instead, those labels go through the generically approved labeling process set forth in 9 C.F.R. § 381.133 and § 317.5. However, labels that contain a "percent fat free" claim

8

that no final labeling can be used on any meat or poultry product unless the sketch labeling of the final labeling has been approved by the Food Safety and Inspection Service ("FSIS"), which is an agency within the USDA. See 9 C.F.R. § 381.132(a), § 317.4(a); see also 60 FR 67444-01, 1995 WL 763225, at *67444; 58 FR 632-01, 1993 WL 1405, at *634, 637. If a label submitted for review is determined to be false or misleading, the FSIS can prohibit the use of the label. See 60 FR 67444-01, 1995 WL 763225, at *67445.

While the USDA through the FSIS regulates the labeling of meat and poultry products, the FDA regulates all other food labeling.[7] The FSIS's nutrition labeling regulations for meat and poultry products parallels, to the extent possible, the FDA's nutrition labeling regulations. See 58 FR 632-01, 1993 WL 1405, at *632, 637. In analyzing the appropriate presentation of "percent fat free" claims in order to avoid misleading consumers, the FDA has stated:

> [T]he agency concludes that with implementation of the provisions . . . regulating the appropriate use of a "percent fat free" claim (i.e., being restricted to use on products that meet "low fat" definitions), the claim will not be misleading or confusing.
>
> \*       \*       \*
>
> Other comments suggested that the "percent fat free" claim should be based on the amount of total calories contributed by the fat and not on the weight of the product, because basing the claim on the weight of the product has the potential to be misleading. The agency disagrees with the comment. FDA believes that consumers are most familiar with claims expressed in terms of g [grams] per serving, and not claims based on the percentage of calories contributed by fat. FDA further believes . . . that "percent fat free" claims imply that the food contains very small amounts of fat (i.e., "low" fat), and that the food is useful in structuring a diet that is low in fat. Basing the "percent fat free" claim on a designated percentage of total calories from fat would not limit the total amount

---

cannot go through the generically approved labeling process. See 63 FR 40010-01, 1998 WL 415642, at *40011 (stating that the FSIS maintains a prior label approval process for reviewing sketch labeling that contains nutrition claims or other types of claims).

[7]The FSIS also regulates the labeling of egg products.

of fat present in the food.  Thus, a food high in calories may be able to make a "percent fat free" claim under a calorie criterion, because the percentage of total calories contributed by the fat falls within an established guideline.  Yet, the amount of fat in such foods could exceed the amount that is defined as "low" fat.  On such a food, the "percent fat free" claim would be misleading. Accordingly, the agency is not permitting "percent fat free" claims to be based on the percentage of calories contributed by fat.

*   *   *

The comments requesting disclosure statements of percent [of] calories from fat . . . did not provide evidence on which the agency could make a finding that such disclosures were necessary to prevent a "percent fat free" claim from being misleading.  Therefore, the agency finds no basis for requiring those disclosure statements.  Furthermore, the agency believes that disclosure statements based on percent of calories would confuse consumers when all other disclosure statements are based on amount of g [grams] per serving. Therefore, the agency is denying the request for these disclosure statements.

58 FR 2302-01, 1993 WL 1540, at *2329-30.

## 2.  Additional or Different Requirements

Against this framework, the Court considers Defendants' argument that Plaintiff's claims are preempted by the PPIA and the FMIA.  As stated by one court:

A court's preemption analysis is guided by two principles.  First, there is a presumption against supplanting the historic police powers of the States by federal legislation unless that [is] the clear and manifest purpose of Congress.  As a result, express preemption clauses should be narrowly construed.  Second, Congress's purpose is the ultimate touchstone in every preemption case. Thus, courts must analyze the language of the statute and the overall statutory scheme.  In conducting a preemption analysis, a court must consider the theory of each claim and determine whether the legal duty that is the predicate of that claim is inconsistent with federal law.

See Meaunrit v. ConAgra Foods Inc., 2010 WL 2867393, at *5 (N.D. Cal. July 20, 2010)(internal citations and quotations omitted); see also Medtronic v. Lohr, 518 U.S. 470, 485-86 (1996).

In regulating the labeling of meat and poultry products, Congress has stated that labeling requirements "in addition to, or different than," those set forth under the PPIA and the FMIA

may not be imposed by any state. See 21 U.S.C. § 467e, § 678. As such, the FMIA and the PPIA preempt state laws that satisfy two conditions: (1) the state law must impose a labeling requirement, and (2) the state labeling requirement must be "in addition to, or different than," the labeling requirements set forth in the FMIA and the PPIA. See ConAgra Foods Inc., 2010 WL 2867393, at *5; Meaunrit v. The Pinnacle Foods Group, LLC, 2010 WL 1838715, at *6 (N.D. Cal. May 5, 2010). In its explanation of preemption under the FMIA and the PPIA, the ConAgra court stated:

> State statutory and common law can impose requirements that satisfy the first prong. For the purposes of preemption, a requirement is a rule of law that must be obeyed, whether it arises from common law principles enforceable in damages actions or in a statute. Concerning the second prong, a state requirement is in addition to or different from federal requirements if it is not "equivalent" or "parallel." A state cause of action that seeks to enforce a federal requirement does not impose a requirement that is different from or in addition to, requirements under federal law.

ConAgra, 2010 WL 2867393, at *5 (internal citations and quotation marks omitted).

In the instant case, both Hormel and Kraft's labels base their "percent fat free" claims on the number of fat grams compared to the weight of their products, as required by the FSIS's nutrition labeling regulations. Additionally, the number of calories per serving that come from fat is stated in the nutrition panel on their labels, as required by the FSIS's nutrition labeling regulations.

Furthermore, as required by the regulations relating to the PPIA and the FMIA, both Hormel and Kraft had to submit their labels to the FSIS for approval prior to using the labels on the products at issue. See 9 C.F.R. § 381.132(a), § 317.4(a). If the FSIS had determined that the labels were false or misleading, Defendants' labels would not have been approved, and the FSIS would have prohibited Defendants from using the labels.

Therefore, because Defendants' labels comply with the FSIS's nutrition labeling regulations and have passed the FSIS preapproval process (as evidenced by Defendants' use of their labels on the products at issue in this case), the labels are presumptively lawful and not false or misleading.[8]  See ConAgra, 2010 WL 2867393, at *2, 6; Pinnacle Foods, 2010 WL 1838715, at *7.  As such, any state law claim based on the contention that the labels are false or misleading is preempted, because such a claim would require Plaintiff to show that the information stated on the labels should have been presented *differently* (thus, imposing a *different and/or additional* labeling requirement than those found under the FMIA and the PPIA).  See ConAgra, 2010 WL 2867393, at *7; see also Pinnacle Foods, 2010 WL 1838715, at *7 (stating that a claim that the label was false or misleading was preempted by the FMIA and the PPIA, because the labels were approved by the USDA, and if a jury concluded that the labels should have disclosed more information or should have employed different language, such would be the imposition of an additional or different requirement from that imposed by the USDA); Dvora v. General Mills, Inc., 2011 WL 1897349, at *4, 6 (C.D. Cal. May 16, 2011)(finding that the plaintiff's claims that the defendant's label should not have contained certain words and/or should have contained an affirmative qualification were preempted by

---

[8]The Court notes that Defendants have submitted exhibits that purport to show the FSIS's approval regarding several of the labels at issue in this case.  (Doc. No. 28, 29).  Additionally, the Court notes that Plaintiff opposes the Court's consideration of such exhibits for a variety of reasons.  The Court has not considered Defendants' exhibits, as such consideration is unnecessary in this case.  The regulations relating to the FMIA and the PPIA are clear that Defendants' labels were required to be submitted to the FSIS for approval prior to their use, and given that the labels were, in fact used, the Court will presume that the labels received the FSIS's approval.

12

NLEA[9], because such claims sought to impose requirements on the defendant's labeling that were different than what was required by the federal regulations).

All of Plaintiff's claims are based on the contention that Defendants' "percent fat free" claims on their labels are misleading because the claims misrepresent that they are based on calories. Therefore, with the exception of the Little FTC Act claim, all of Plaintiff's claims are preempted.[10]

The Court notes that generally an express warranty claim would not be preempted by the FMIA or the PPIA, because an express warranty claim merely holds the defendant responsible for delivering the product as warranted. See Bates, 544 U.S. 431 (evaluating whether an express warranty claim was preempted by a different federal labeling act). Thus, if Defendants' labels had claimed that their products were 99% fat free when they actually contained 20% fat based on weight, then a breach of express warranty claim would not be preempted, because such a claim would simply hold Defendants responsible for not delivering products that were 99% fat free by weight.[11]

However, in the instant case, in order for Plaintiff to succeed on his express warranty

---

[9]The Nutrition Labeling and Education Act ("NLEA") preempts state regulations related to food labeling that are not identical to the requirements in the Federal Food, Drug, and Cosmetic Act ("FDCA"). See Dvora, 2011 WL 1897349, at *3 (citing 21 U.S.C. § 343-1(a)).

[10]Because Plaintiff is a Florida resident, the Court analyzes his Little FTC Act claim under Florida's Deceptive and Unfair Trade Practices Act ("FDUTPA"). Pursuant to Florida Statute § 501.203(3)(c), a violation of FDUTPA can be based on a violation of a federal statute that proscribes deceptive acts (such as the FMIA and the PPIA's prohibition against misleading labels), and therefore, such a claim would not be preempted.

[11]In this example, in order for the product to be different than represented, the percentage of fat in the product **based on the product's weight** has to be different than what was represented on the label, because the FSIS's nutrition regulations require that "percent fat free" claims be based on weight.

claims, Plaintiff would have to show that Defendants' "percent fat free" claims represented that the claims were based on calories, which is something other than what the FSIS's nutrition labeling regulations allow. Because the FSIS's nutrition labeling regulations dictate *how* a "percent fat free" claim can be stated on a label and *the basis* for making such a claim, Plaintiff's breach of express warranty claims that contradict the FSIS's nutrition labeling regulations are preempted.

### B. Failure to State a Claim

Even if Plaintiff's claims were not preempted, all of his claims, with the exception of his Little FTC Act claim, would still be dismissed for failure to state a claim. All of Plaintiff's claims are based on the contentions that: (1) the "percent fat free" claims on Defendants' labels *misrepresent* that they are based on the amount of calories that come from fat in the product, which misleads consumers into believing that there are less fat calories in the product than there actually are; and (2) Defendants' labels are *misleading* because they do not contain qualifying language next to the "percent fat free" claims to explain that the claims are actually based on weight, not calories. However, these contentions are frivolous with respect to Hormel's labels, and they are disingenuous at best with respect to Kraft's labels.

#### 1. Hormel's Labels Are Not Misleading and the "Percent Fat Free" Claims Do Not Misrepresent that They Are Based on Calories

Plaintiff concedes that Hormel's labels do not reference the number of calories per serving next to the "percent fat free" claim on the front label of its products. As such, Plaintiff's argument–that Hormel's labels are somehow *misleading by association*, since Hormel's products are on grocery shelves next to Kraft's products–is frivolous. It is undisputed that Hormel's labels do not reference the number of calories per serving next to their "percent fat

14

free" claim on the front of its products and that the number of calories that come from fat is stated in the nutrition panel on the back label of its products. Furthermore, the FSIS nutrition labeling regulations require that "percent fat free" claims be based on weight. Therefore, the Court finds as a matter of law that: (1) Hormel's labels do not misrepresent that the "percent fat free" claims are based on calories, nor do they misrepresent the amount of calories that come from fat; and (2) Hormel's "percent fat free" claims on its labels are not misleading regarding the percent and number of calories that come from fat. Since all of Plaintiff's claims against Hormel, with the exception of the Little FTC Act claim, are based on the contentions that Hormel's labels contain misrepresentations and/or are misleading, the Court finds that all of Plaintiff's claims against Hormel, with the exception of the Little FTC Act claim, must be dismissed as failing to state a claim.

### 2. Kraft's Labels Are Not Misleading and the "Percent Fat Free" Claims Do Not Misrepresent that They Are Based on Calories

With respect to Kraft's labels, Plaintiff contends that Kraft's labels mislead consumers by affirmatively misrepresenting that the "percent fat free" claim is based on the percentage of calories that come from fat. Plaintiff bases this contention on the proximity of Kraft's "percent fat free" claim to the statement of calories per serving on the front labels of Kraft's products. However, as explained below, Plaintiff's argument–that consumers are misled by the proximity of the "percent fat free" claim to the calories per serving listed on the front label of Kraft's products, which caused them to buy the product and ingest more fat calories than they would have ingested had they not been misled by the misrepresentation–is disingenuous at best.

Plaintiff acknowledges in his complaint that since 1994, nutrition panels on food labels (not just meat and poultry labels) have been required to disclose both the total calories for the

product, as well as the number of those calories that come from fat. Furthermore, the FDA has analyzed the best way to present "percent fat free" claims on food labels and has determined that "consumers are most familiar with claims expressed in terms of g [grams] per serving, and not claims based on the percentage of calories contributed by fat." 58 FR 2302-01, 1993 WL 1540, at *2330. Therefore, given that "percent fat free" claims are required to be based on weight and have been expressed based on weight for food products in general for more than seventeen years, and given that the amount of calories that come from fat also has been listed in the nutrition panel on food labels for more than seventeen years, it is disingenuous of Plaintiff to assert that Kraft's labels are misleading and/or misrepresent that its "percent fat free" claim is based on calories. Accepting Plaintiff's contention would mean that consumers who purchase lunch meat products based on the amount of calories that come from fat forgo simply turning the package over to determine the amount of fat calories in the product, and instead, undertake a math calculation based on the "percent fat free" claim and calories listed on the front label.[12]

Because the number of calories that come from fat is clearly disclosed in the nutrition panel on Kraft's labels, the Court finds that as a matter of law, Kraft's labeling is not misleading regarding the number of calories that come from fat in its products. See, e.g., McKinniss v. Sunny Delight Beverages Co., 2007 WL 4766525, at *4 (C.D. Cal. Sept. 4, 2007)(rejecting the plaintiffs' argument that the defendant's beverage labels that contained pictures of fruit and used various fruit names to describe the beverages was likely to mislead consumers into believing that

---

[12]Additionally, the Court notes that it would be impossible for consumers to determine how many fat calories that they consumed when eating Kraft's products without turning the package over and looking at the nutrition panel to determine what the serving size was. In doing so, consumers would also see the number of fat calories in the product, which is listed in the nutrition panel near the serving size.

the beverages contained a significant amount of real fruit, and noting that a review of the ingredient list and other portions of the label clearly revealed that the beverages contained 2% or less of concentrated fruit juice); McKinnis v. General Mills, Inc., 2007 WL 4762172, at *3-5 (C.D. Cal. Sept. 18, 2007)(rejecting the plaintiffs' argument that the defendants' cereal and yogurt that contained pictures of fruit and used the word "fruit" on the packaging was likely to mislead consumers into believing that the products contained real fruit or fruit juice, and noting that a review of the ingredient list on the packaging clearly revealed that the products did not contain real fruit or fruit juice); McKinnis v. Kellogg USA, 2007 WL 4766060, at *4 (C.D. Cal. Sept. 19, 2007)(rejecting the plaintiffs' argument that the defendants' packaging for its "Froot Loops" cereal that contained pictures of fruit on the packaging was likely to mislead consumers into believing that the cereal contained actual fruit, and noting that a review of the ingredient list on the packaging clearly revealed that the cereal did not contain fruit). Likewise, given that "percent fat free" claims have been included on food labels (not just meat and poultry products) for more than seventeen years, and during that time, the claims have been based on weight (as determined by the FDA to be the measure that consumers were most familiar with), the Court finds as a matter of law that Kraft's "percent fat free" claims are not a representation that the claim is based on calories. Accordingly, because all of Plaintiff's claims against Kraft, with the exception of the Little FTC Act claim, are based on the contentions that Kraft's labels contain misrepresentations and/or are misleading, the Court finds that all of Plaintiff's claims against Kraft, with the exception of the Little FTC Act claim, must be dismissed as failing to state a claim.

17

### 3. Little FTC Act Claim

In Count IV, Plaintiff alleges that Defendants' use of their "percent fat free" claims on their labels, websites, and advertising is misleading, and as such, it is an unfair and deceptive trade practice. Therefore, Plaintiff asserts a claim for Defendants' violation of every state's Little FTC Act.

Because Plaintiff is a Florida resident, the Court analyzes his Little FTC Act claim under Florida's Deceptive and Unfair Trade Practices Act ("FDUTPA"). Pursuant to Florida Statute § 501.203(3)(c), a violation of FDUTPA can be based on a violation of a federal statute that proscribes deceptive acts. The FMIA and the PPIA are federal statutes that prohibit misleading labels, and therefore, a violation of the FMIA or the PPIA can be the basis for a FDUTPA claim. Furthermore, to the extent that Plaintiff is, in fact, basing his FDUTPA claim on a violation of the FMIA or the PPIA, such a claim would not be preempted. However, such a claim fails as a matter of law, because the FSIS approved Defendants' labels.

Plaintiff attempts to argue that he can base his FDUTPA claim on Defendants' labels being misleading under the Federal Trade Commission Act. While such a claim would not be preempted, the claim still fails. According to the FTC's Enforcement Policy on Food Advertising ("Enforcement Policy"),[13] while the FTC's jurisdiction over unfair or deceptive acts and practices includes unfair or deceptive labeling of foods, the FTC has assumed primary responsibility for regulating food *advertising* and allowed the FDA and USDA[14] to assume

---

[13]The FTC's Enforcement Policy can be found on the FTC's website at: www.ftc.gov/bcp/policystmt/ad-food.shtm.

[14]The FTC states in its Enforcement Policy that the FDA has assumed primary responsibility for regulating food labeling. However, in footnote 2, the FTC notes that the FSIS

primary responsibility for regulating food labeling. Furthermore, the FTC stated in the Enforcement Policy that "as a general matter, it is unlikely that the Commission will take action under . . . the FTC Act regarding nutrient content and health claims if they comply with FDA's regulations." Since the FTC has stated in the Enforcement Policy that it intends to apply similar principles from the Enforcement Policy to products regulated by the USDA, it appears that if Defendants' labels comply with the FSIS's nutrition labeling regulations, the FTC would not pursue a claim that the labels were defective under the FTC Act. As such, since the FSIS approved Defendants' labels, it is unlikely that the FTC would pursue a claim that Defendants' labels were defective under the FTC Act. Therefore, the Court finds that Plaintiff fails to state a FDUTPA claim based on the contention that Defendants' labels violate the FTC Act.

However, a close reading of Plaintiff's complaint reveals that Plaintiff's FDUTPA claim is based on more than Defendants' labels; it is also based on Defendants' websites and non-label advertising.[15] Such a claim is not preempted under the FMIA or the PPIA.

Plaintiff's allegations regarding the unfair and deceptive nature of Defendants' websites and non-label advertising describe the unlawful conduct as Defendants misrepresenting that their products are a particular "percent fat free" based on calories. However, Plaintiff does not

---

of the USDA has issued its own nutrition labeling regulations, and while the Enforcement Policy specifically relates to the FDA's regulation, the FTC states that it intends to apply similar principles from the Enforcement Policy to products regulated by the USDA.

[15]There are very few references in the complaint to Defendants' websites and non-label advertising. In fact, Plaintiff's description of the proposed class does not even require that the class members have seen Defendants' websites or non-label advertising. Instead, Plaintiff describes the proposed class as "All persons who purchased in the United States the deli-meat-style food products marketed and distributed by Defendants, labeled with "Percentage-Fat-Free" claims between April 2006 and the present."

19

describe the context of the misrepresentations, i.e., Plaintiff does not state whether the websites and non-label advertising consist of "percent fat free" claims in isolation or in proximity to a calorie claim. Given the scarce detail regarding this claim, the Court dismisses this claim without prejudice. However, the Court will give Plaintiff leave to amend the claim.

**IV. Conclusion**

Accordingly, it is ORDERED AND ADJUDGED that:

(1) Defendants' Joint Motion to Dismiss (Doc. No. 27) is **GRANTED**.

(2) Plaintiff's claims against Defendants in Counts I-III and V-XI are dismissed with prejudice.

(3) Plaintiff's Little FTC Act claim in Count IV is dismissed with prejudice to the extent that it is based on Defendants' labels; otherwise, it is dismissed without prejudice.

(4) Plaintiff may file an amended complaint to assert a Little FTC Act claim based on Defendants' websites and non-label advertising by September 30, 2011. If Plaintiff fails to file an amended complaint by September 30, 2011, the Court will close this case without further notice.

(5) Defendants' Motion to File a Reply Brief (Doc. No. 44) is **DENIED AS MOOT**.

**DONE AND ORDERED** at Tampa, Florida, this 12th day of September, 2011.

*Susan C. Bucklew*
SUSAN C. BUCKLEW
United States District Judge

Copies to:
Counsel of Record